McKenney, J.
delivered the opinion of the court.
The plaintiff in error was indicted, tried, and convicted at the April term, 1848, of the Circuit Court of Grainger county, of an assault and battery upon one John Dalton. Upon being arraigned, the defendant, in the court below, pleaded in bar to the indictment, a former trial and conviction for the same offence, before Henry Williams, a Justice of the Peace for said county, pursuant to the Act entitled “an Act for the punishment of small offences,” passed January 10, 1848. The proceedings in the case before the. Justice, seem to have been regular and are incorporated into said plea. The judgment of the Justice is as follows, viz: “This day came before me, Aaron McGinnis, who being charged upon the within warrant, says he is guilty of the charge in manner and form as is therein alleged against him; and after hearing witnesses as well on behalf of the State as of the defendant, and fully understanding *46 the premises, it is considered by me that the said Aaron McGinnis be fined the sum of two dollars, and that he pay all the costs of this prosecution; which being done, the defendant is by me discharged.” To this .plea of the defendant, the Attorney General demurred, and, on argument, the demurrer was sustained upon the ground, that the Act referred to was unconstitutional and void, and that, therefore, the former trial and conviction, under its provisions, formed no bar to this prosecution; and the court proceeded to render judgment upon the demurrer, “that the defendant for the offence charged in said indictment be fined the sum 6f two dollars and fifty cents, and that he pay the costs of this prosecution.” From this judgment the defendant appealed in error to this court; and on his behalf it is insisted, that the proceedings in the Circuit Court were erroneous and illegal, because the former trial and conviction, before the Jus! ice, constituted a bar to any other prosecution for the same offence. In answer to this, it is argued by the Attorney General for the State, first, that the Act passed 10th January, 1848, is unconstitutional, and that it was therefore properly treated by the Circuit Court as a nullity; and, second: that, if constitutional, it does not, by any proper construction, confer jurisdiction upon a Justice of the Peace to proceed to take the submission of, and assess a fine against, the defendant in cases of •assault and battery; and that upon either of these grounds the demurrer was properly sustained.
. It is argued by the Attorney General, that the first section of the Act in question, violates alike the sixth and fourteenth sections of the Declaration of Rights, which now forms the first article of the amended constitution — the latter of which declares, that “no freeman shall be put to answer any criminal charge, but by presentment, indict *47 ment, or impeachment;” and the former, “that the right of trial by jury shall remain inviolate.”
1st, It will be observed, in the first place, that the 14th section, cited above, relates only to the mode of prosecution or formal accusation, of offenders. And we are not prepared to hold that its prohibition includes, or at all applies to prosecutions for mere misdemeanors. With a view to this question, let us enquire how the law of England stood, upon this subject, at the time of the American Revolution in order to ascertain what law, in relation to the prosecution of offences our ancestors brought with them to this country, as part of their “birthright and inheritance.” For we apprehend, the rule, that statutes are to be construed in reference to the principles of the common law, is alike applicable to a provision of the constitution, or fundamental law, and for the same reason, that the framers of the law in either case, are not to be presumed to have intended to make any change, or innovation upon the common law further than is expressly declared.
The provision of the 14th section, is in substance, borrowed from Magna Gharta, as are also the provisions of ■several other sections of the “ Declaration of Rights.” The great charter, ch. 29, (9 Henry 3,) declares, that, “no freeman shall be taken, or imprisoned, or be deprived of his freehold, or free customs, or be outlawed, or exiled, or any otherwise destroyed; nor will we pass upon him, nor condemn him, but by lawful judgment of his peers, or b!y^ the law of the land.” 2 Inst. 45. And in his exposition of the meaning of the words, “but by the law of the land” in the foregoing chapter, Sir Edward Coke, says: “For the true sense and exposition of these words, see the statute of 37 Ed. Ill, ch. 8, where the words ‘by the law of the land.’ are rendered, without due process of law, for there it is said, *48 though it be contained in the great charter, that no man be taken, imprisoned, or put out of his freehold without process of the law; that is, by indictment, or presentment of good and lawful men, where such deeds be done in due manner, or by writ original of the common law, without being brought in to answer but by due process of the common law.” 2 Inst., 50. And according to the same author, “this chapter is but declaratory of the old law of England.”
What, then, was the common law mode of prosecution? Blackstone, in his Commentaries, (4 voh, 301,) informs us> that “this is either upon a previous finding of the fact by an inquest or grand jury; or without such previous finding. The former way is either by presentment or indictment.”
The mode of prosecution, without a previous indictment, or presentment by a grand jury, “to fix the authoritative stamp of verisimilitude upon the accusation,” is that of information. Id. 307-8, Informations, exhibited in the name of the King, are of two kinds; first, those properly his own suits, and filed ex officio by the Attorney General; and, second, those in which, though the King is nominal prosecutor, are yet at the relation of some private person. The objects of the latter, are “any gross and notorious misdemeanors, riots, batteries, libgls, and other immoralities of an atrocious kind.” And when an information of either kind was filed, it was tried by a petit jury of the bounty where the offence arose. And this mode of prosecution, according to the learned commentator, is as ancient as the common law itself. Id. 309. “But these informa-tions are confined, by the constitutional law of England, to mere misdemeanors only; for, whenever any capital offence is charged, the same law requires that the' accusation be warranted by the oath of twelve men, before the *49 party shall be pat to answer it.” Id. 310. From this brief view of the usual manner of prosecuting offenders at common law, it appears, that for mere misdemeanors, persons might be put to answer, without presentment or indictment previously found by a grand jury; and that it was only for “crimes” in the proper sense of that term, or • felonious offences, thal it was indispensable that the accusation should be warranted by the finding of a grand jury, before the offender could be put to answer. When our ancestors removed to America, they brought with them this privilege, as part of the common law, and it has been incorporated, in substance, into the constitution of the United States, and perhaps all our State constitutions. The 5th article of the amendments to the Federal constitution, declares, that “no person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service, in time of war, or public danger.”
In commenting upon this article, Mr. Justice Story, says: “The first clause requires the interposition of a grand jury, by way of presentment or indictment before the party accused can be required to answer any capital and infamous crime charged against him. And this is regularly true, at the common law, of all offences above the grade of common misdemeanors.” Commentaries on Con., vol. 3rd, Sec. 1778.
The phrase “criminal charge” in the 14th section of our Declaration of Rights, must be taken to have been used in its proper and technical sense. Such is the rule of construction in reference to statutes, unless it clearly appears that the words were intended to be-applied differently from their ordinary legal acceptation.
*50 The terms “crime and misdemeanors,” in their legal signification, are descriptive of offences of different and distinctive grades. “In the English law, misdemeanor is generally used in contradistinction to felony; and misdemeanors comprehend all indictable offences, which do not amount to felony.” 4 Bl. Com., Note 3, by Christian.
■ It cannot for a moment be supposed that the term “criminal charge” was intended to comprehend or apply to misdemeanors, because by the common law as well as by statutory enactments in North Carolina, in force in this territory at the adoption of our constitution, and still in force, numerous offences, of the grade of misdemeanors, were summarily tried and punished, without presentment or indictment, by a single magistrate, as in cases of drunkenness, profane swearing, Sabbath breaking; vagrancy, and others that might be enumerated.
We incline to the opinion that the sixth and fourteenth sections of the Declaration of Rights were merely designed to secure the mode of prosecution, in cases of felony, and of the trial by jury, as they respectively existed at the common law. The fact that the practice had been, in North Carolina, and has continued to be in this State, to prosecute misdemeanors, not upon information but by presentment or indictment, weighs nothing' in settling the true meaning of the constitutional provision in question; because, the object of this provision, was not to forbid the prosecution of misdemeanors by the finding of an indictment or presentment by a grand jury, nor does it forbid this; but, to guarantee to every freeman the great privilege and security- of not being put to answer any criminal charge, affecting the right to life or liberty, without a written accusation, previously verified by the oath of a grand jury, in the form of a presentment or indictment.
*51 But we deem it unnecessary to discuss tbis question any farther, as its decision is not necessary in the determination of this case.
Second: conceding, for the sake of the argument, that the 14-th section of the Declaration of Rights, applies to misdemeanors, is either the provision of this, or of thé 6th section, violated by the Act in question? The 1st section provides “That any person brought before a Justice of the Peace for any misdemeanor, may plead guilty. Whereupon the Justice shall hear evidence, and fine the offender according to the aggravation of his offence, not less than two dollars, and not exceeding fifty dollars, together with the costs.”.
The fifth section directs, “That if the offence merit a fine exceeding fifty dollars, or imprisonment and fine of any amount, or imprisonment alone, or if the offence is punishable expressly by both fine and imprisonment, the Justice shall not render judgment against the offender, but shall proceed as usual.”
And by the 22d section, is provided, that “if any person proceeding under this Act, abuse, or exceed his power, or exercise power not granted, the injured party, by written petition, alleging the grievance, and verified by his, or his agent’s affidavit, and addressed to the Circuit Judge of the county in which the proceeding is had, shall have a writ of supersedeas and certiorari, granted by any Circuit Judge, by which the proceeding shall be transferred to the Circuit Court of the county, and be there determined as though nothing had been done under this Act.” We confess ourselves utterly unable to perceive how either of the sections of the Declaration of Rights referred'to, is in the slightest degree infringed by any one-of the provisions of the foregoing Act; or that they are in any respect incompatible *52 with each other. How does this Act “put the defendant to answer’"' without his consent: or how, without his consent, deprive him of a trial by jury, as is the true import of the prohibitions contained in the two sections of the bill of rights in question? When brought before the Justice upon warrant, if of sufficient legal disci’etion to be amenable to the law for his offence, and left to the exercise of his own volition, why may he not be permitted, in order to escape the delay and expense of a formal prosecution in the Circuit Court, to submit to a mere fine, and thereupon be discharged? There is nothing compulsory in the Act. The privilege.is for the ease and benefit of the defendant, it is at his election whether to avail himself of it or not. The Justice cannot move a step under the Act, unless the defendant prays the benefit thereof. The proposition, that the privilege secured to defendants by this Act, is a violation of any constitutional right, is scarcely worthy of serious discussion. It involves the palpable absurdity, that a party is deprived of a right which he voluntarily waives or surrenders. Has it not been the every-day practice in the Circuit Courts, for defendants, bound over to answer for misdemeanors, to plead guilty and waive a trial by jury? and this, not unfrequently, even before the finding of an indictment. And who ever supposed that the Judge, in, yielding to the prayer of the defendant in such case, was violating the constitution, and depriving the defendant of a right secured to him? In the case under consideration, we take it, his Honor, the Circuit Judge, who rendered Judgment against the defendant upon the demurrer, never suspected that he was violating the constitutional rights of the defendant, although he was deprived of a trial by jury, and that too, upon a mere fiction of law, not by his own consent. The numerous cases of summary trial and *53 conviction, before alluded to, bave never been regarded as in violation of tbe constitution. Filiation cases, in which the party is, by positive law, deprived of a trial by jury, are held not to be in violation of the right of trial by jury. In civil cases, the extensive and vastly important jurisdiction conferred upon Courts of Chancery, and the summary proceedings by motion, grown so common in courts of law, are not deemed to be in violation of the right of trial >by jury. But it is needless to argue a proposition that requires only to be stated, to show that it is destitute even of plausibility. The power of the Justice is so guarded and circumscribed as to secure the defendant from any sérious injury. And he has it in his power, in case of the least excess or abuse, of the discretion conferred upon the Justice, to avoid the proceeding altogether, by having the case transferred to the Circuit Court. With the wisdom or policy of the Act we have nothing to do — our duty is confined to the determination of the question whether it be, or be not constitutional; and this question, we think, admits of no doubt. Third: The argument, that the Act confers no jurisdiction upon the justice in cases of assault and battery, we think is wholly untenable. The 8th section in very explicit terms enumerates the cases, or classes of cases, in- which the Justice shall not exercise jurisdiction, “but shall proceed as usual.” 1st. Where the offence merits a fine exceeding fifty dollars. 2nd. Where the offence merits both imprisonment and fine of any amount. 3rd. Where the offence merits imprisonment alone. 4th. Where the offence is punishable expressly by both fine and imprisonment. In all the foregoing cases the Justice has no power to assess a fine or to take the submission of the defendant, although he should plead guilty and seek to avail himself of the benefit of the Act. In all such cases it is the duty *54 of tbe justice to bind the defendant over to the Circuit Court as formerly. The jurisdiction is limited and restricted to ordinary cases of misdemeanor, accompanied with no serious aggravation; and which, in the exercise of a sound and enlightened discretion, are regarded as meriting only a fine. The argument of the Attorney General is, that by the common law, assaults and batteries are “punishable ' expressly by both fine and imprisonment,” in the discretion of the Judge, and that, therefore, by the very letter of the 8th section, this class of misdemeanors is excluded from the jurisdiction of the Justice. This is obviously not the meaning of the Act. The class of cases here contemplated,, are those misdemeanors, of whatever character, where, by express provision of law, both fine and imprisonment must be inflicted as part of the judgment to be rendered in the case, and in respect to which no discretion is left to the Judge, as by the Act of 1803, ch. 9, in cases of malicious mischief, selling spirituous liquors to slaves, &c. But there is another ground upon which this proceeding was wholly unwarranted — all other questions aside. Supposing the Act to be utterly unconstitutional and void, to every intent, and purpose, still, if the State, by whose sanction it was enacted has treated it, in this instance at least, as a valid and constitutional law, and has, under its forms and by its authority, caused the plaintiff in error to be tried, convicted and punished, and the conviction has been acquiesced in and remains in force, upon what principle or authority is it, that the State shall be permitted to treat such trial and conviction as a nullity, and demand a second trial, conviction, and punishment of the individual in another tribunal for the same identical offence? The defendant, whose rights were invaded, according to the argument of the Attorney General, might have refused to submit, and *55 have demanded a legal trial, but he did not do so; and surely a second prosecution, at the instance of the State, would be as much putting the offender twice in jeopardy, and twice inflicting punishment' for the same offence, as if the first conviction and punishment had been under a constitutional and valid law. The State is estopped to demand such second prosecution.
We are of opinion, therefore, upon all the foregoing grounds, that the defendant’s plea constituted a bar to the indictment. The judgment of the Circuit Court will be reversed, and arrested, the indictment quashed, and the plaintiff in error discharged.