IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 4, 2005 Session

## CITY OF JOHNSON CITY v. DORIAN JONES

**Appeal from the Law Court for Washington County**
**No. 22106     Jean A. Stanley, Judge**

---

**No. E2003-02534-COA-R3-CV  - FILED MAY 20, 2005**

---

Dorian Jones ("the defendant") was cited to the Municipal Court of Johnson City for a violation of the Animal Control Ordinance ("the Ordinance") of the City of Johnson City ("the City"). The City contends that the defendant failed to have his dog "under control." Following a finding of guilt and the imposition of a $50 fine and costs, the defendant appealed to the trial court. Following a bench trial, the trial court entered its judgment, in which it held that the defendant violated the Ordinance. The trial court dismissed the defendant's appeal and decreed that "the fine of Fifty Dollars ($50.00) . . . be reinstated and is hereby upheld and affirmed." The defendant appeals to us, contending that he was entitled to a jury trial. He also argues, in legal effect, that the evidence preponderates against the trial court's judgment. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Law Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

Mike Whalen, Knoxville, Tennessee, for the appellant, Dorian Jones.

James H. Epps, IV, Johnson City, Tennessee, for the appellee, City of Johnson City.

**OPINION**

I.

On August 6, 2002, at approximately 1:30 a.m., Officer Jeff Jenkins, a member of the City's police force, responded to an alarm at the Southside Elementary School. Officer Jenkins is a K-9 officer; on the evening in question he was accompanied by his trained police dog, "Tigger." As the officer was checking the school premises, he encountered the defendant and his dog, "Butch," a large German Shepherd. Estimates of the dog's weight vary from a low of 79 pounds, according to the

defendant, to a high of 125-130 pounds, as testified to by a letter carrier who was called as a witness by the defendant.

It is undisputed (1) that Butch was not on the defendant's property; (2) that the dog was not on a leash; (3) that he was walking in front of the defendant; and (4) that the police officer called several times to the defendant to get his dog back. The record reflects that after the officer had made several verbal commands to the defendant to get his dog back, the officer told the defendant he "would shoot his dog if he came up toward [the officer's] dog." The officer admitted that he "pull[ed] [his] weapon from the holster." As Butch continued to approach the officer, Officer Jenkins holstered his weapon and maced the animal. Butch stopped for a few seconds, after which, according to the officer, the dog "continued to come to my location." The following then transpired, as related by Officer Jenkins:

> At which point my dog broke his sit. I mean, my dog's not going to sit there and let some dog walk up and attack him. So he stood to defend himself. I kept my body between my dog and Mr. Jones' dog. I turned my body and kept – kept myself between the two dogs. His dog circling to do the primary thing of a dog that's coming in, he's going to sniff. I kept my dog on one side and I kept him on the other. At that point I reached to grab Butch and Butch growled at me. Now – now I've got my dog on lead, on my left-hand side, which is my gun hand, I've got Butch on my right-hand side within a few feet of my dog, I can't shoot him. So I stopped. I didn't even try to grab him I reached to grab him and he growled at me and I let go. That's when Mr. Jones finally came up and took physical control of his dog.

As a result of this encounter, Officer Jenkins charged the defendant with violating the following section of the Ordinance:

**SECTION 2. RESTRAINT**

\* \* \*

> b. <u>Duty to Keep Animal Under Restraint While off of Property</u>. It shall be the duty of the owner of any animal or anyone having an animal in his care, custody or possession to keep said animal under control at all times while the animal is off of the real property limits of the owner, possessor or custodian. For the purposes of this section, an animal is deemed "under control" when it is confined within a vehicle, parked or in motion, is secured by a leash or other device held by a competent person, is under voice command of a competent person and said person being present with said animal, or is properly

confined within an enclosure with permission of the owner of property where the enclosure is located.

(Capitalization, bold print and underlining in original).

## II.

Our review is *de novo* upon the record of the proceedings in the trial court. Tenn. R. App. P. 13(d). We accord a presumption of correctness to the trial court's factual findings, unless the evidence preponderates against these findings. **Id**. As to the trial court's conclusions of law, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." **S. Contractors, Inc. v. Loudon Co. Bd. of Educ**., 58 S.W.3d 706, 710 (Tenn. 2001).

"[T]rial courts are in the most favorable position to resolve factual disputes hinging on credibility determinations." **Wells v. Tenn. Bd. of Regents**, 9 S.W.3d 779, 783 (Tenn. 1999). Appellate courts do not "re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." **Id**.

## III.

The defendant contends that the trial court erred in refusing to grant his request for a jury trial. We disagree.

Jury demands on appeals to circuit court from inferior jurisdictions are controlled by Tenn. R. Civ. P. 38.03. As pertinent to the facts of the case before us, that rule provides as follows:

> In cases removed by appeal or otherwise to the chancery or circuit courts or to courts of similar jurisdiction, any party may demand a trial by jury of any issue triable of right by jury by filing written demand for jury trial within 10 days after the papers are filed with the clerk. . . .

If a party fails "to make demand as required by this rule [,*i.e.*, Tenn. R. Civ. P. 38]," such a failure "constitutes a waiver by the party of trial by jury." Tenn. R. Civ. P. 38.05. *See also* **City of Chattanooga v. Myers**, 787 S.W.2d 921, 927 (Tenn. 1990).

In the instant case, "the papers [were] filed with the clerk [of the trial court]," *see* Tenn. R. Civ. P. 38.03, on September 24, 2002. On February 14, 2003, the defendant, proceeding pro se, filed his jury demand, some 143 days after the papers on appeal had been filed with the trial court clerk. In his "Request for Jury Trial," the defendant asked the trial court to grant "his tardy request for jury." On April 11, 2003, the trial court entered an order denying the defendant's jury demand.

In his jury demand and in his brief on this appeal, the defendant contends that, prior to the filing of his jury demand, he was confused as to whether his appeal was scheduled for a jury trial or a trial before a judge. He correctly points out that he was sent *two* "Notice of Trial Date," both of which are dated November 27, 2002. In one, he was advised that his case was "set for trial *by jury* on 1-24-03"[1] (emphasis added); while in the other he was notified that the appeal was "set for trial on 1-24-03," with no mention of a jury. He claims that he was confused by these two notices.

We understand how the defendant could have been confused by the notices; but, his confusion, coming when it did, is immaterial. Under Rule 38.03, the defendant had 10 days to file his jury demand. He failed to do so within the stated period of time. The confusing notices were sent to him on or about November 27, 2002, long after the time for filing a jury demand had expired. Hence, any confusion engendered by the notices is not germane to the defendant's contention that the trial court erred in denying his request for a jury trial.

We recognize that the defendant was without counsel in the municipal court and in the early stages of his appeal to the trial court. Courts evaluate papers filed by pro se litigants, most of whom are untrained in the law, by a less stringent measure than that applied to lawyers. ***Winchester v. Little***, 996 S.W.2d 818, 824 (Tenn. Ct. App. 1998). However, pro se litigants "must follow the same procedural and substantive law as the represented party." ***Irvin v. City of Clarksville***, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). The defendant did not file a timely jury demand. His first issue is found adverse to him.

IV.

Finally, the defendant contends, in effect,[2] that the evidence preponderates against the trial court's judgment. We conclude that it does not.

The trial court, in its opinion rendered from the bench, stated, in part, as follows:

> From Mr. Jones' testimony he tells the Court that he saw an officer coming down the hill from the school on the path. That his dog was some twelve to fifteen feet ahead of him. That the dog is nine years old, it weighs about ninety pounds. Other – the testimony of everybody else is that he looks like he weighs about a hundred and twenty pounds. The officer did indeed say, "Get your dog back." At that point the testimony is that Mr. Jones said, "Come on, Butch" without any urgency and that Butch slowed down.

---

[1]The case was later continued from this date.

[2]The defendant frames his issue in terms of "insufficient evidence" that Butch "was [ever] out of control." Our task, under Tenn. R. App. P. 13(d), is to determine whether the evidence preponderates *against* the trial court's factual findings underpinning its conclusion that the defendant violated the Ordinance.

The testimony is further uncontroverted that Mr. Jones does have a command that he can use to bring this dog completely to a stop and to return that dog to his side and he chose not to use that command. Apparently the officer then said something along the line of, "If you don't get the dog I will shoot." At that point he either pulled a gun or had a gun unholstered. And a third time he said, "Get your dog".

Mr. Jones testifies that he didn't use the very loud command, "Butch, get over here" because he's afraid he would get shot. It doesn't appear very reasonable to the Court, you know, if an officer tells me three times in the middle of the night at 1:00 in the morning to get my dog, I'm going to use whatever command it takes to get my dog, folks, and so would everybody else in this courtroom.

* * *

I think the problem here is that the owner made a decision not to stop this dog and not to make that dog return to his side and that's not really Butch's fault. Frankly I think that's his owner's [sic] fault. I think the citation is deserved. I think that Mr. Jones could have stopped Butch and put an end to all this and he just decided that he wouldn't do it. And that's exactly what got us here. A competent person does not let a 90 pound dog off a leash approach an officer at 1:00 to 1:30 A.M. when the officer tells you three times "Get the dog back" and means it to the extent that he actually unholsters his weapon.

So I do find that the appeal should be dismissed and that the ticket was valid.

The Ordinance defines the concept of "under control." The requisite control can be shown by evidence that the subject animal (1) "is confined within a vehicle, parked or in motion"; (2) "is secured by a leash or other device held by a competent person"; (3) "is under voice command of a competent person" who is "present"; or (4) "is properly confined within an enclosure" on the property of, and with the permission of, the owner of the property where the enclosure is located.

In the instant case, it is undisputed that Butch was "off of the real property limits of the" defendant, his owner. With respect to the "under control" definition, it is clear that Butch was not "under control." In fact, the defendant's own testimony reflects that he was cognizant of a "voice command" that would have effectively caused Butch to return to his master, but that he did not use it:

A. . . . Anyway, the command that I'll use if I can, I don't want to break her eardrums is rather severe and it's, excuse me, if you want to take it off, it's "Butch, get over here." And he's there. And that's, you know, it's just what I do, it's – how I got into it I don't know, but he's had a habit of "come on, come on, come on" and we know it, you know, I don't force it. And that's the command that'll get him in the middle of the street, I don't care if he's going after a squirrel, running after the UPS truck that he loves to chase and I can stop him dead in the street.

* * *

Q. So you didn't stop Butch in his tracks with your voice command, did you?

A. No, I did not.

Q. That would have necessitated – which would have necessitated that the Defendant scream at Butch?

A. Uh-huh.

Q. You never stopped Butch, did you, with your voice command at all?

A. I never issued the voice command.

The defendant testified that he did not use the voice command that he was sure would have worked because he was afraid of startling the officer. He stated that he was concerned because the officer had a pistol and was afraid that if he startled the officer, he would get shot. The trial court did not find this testimony credible. There is no "clear and convincing evidence" in the record contrary to the trial court's credibility determination. *Wells*, 9 S.W.3d at 783.

The issue before us is not whether Butch was a vicious dog; nor is the issue whether Butch caused harm to the officer or his dog or whether he was a threat to do so. While the Ordinance is certainly designed to protect against all of this, it is clearly designed to address other concerns. In the interest of public health, safety, and welfare, a city has the right to require an owner to take the necessary steps to ensure that his or her dog does not trespass upon the property of another; or defecate on another's property; or run at large on its streets so as to constitute a hazard to vehicular traffic. Therefore, it matters not whether Butch was a "good" dog or a gentle dog or a dog who had no vicious tendencies. The issue is whether the dog was "under control." The evidence does not preponderate against the trial court's judgment that he was not.

V.

The judgment of the trial court is affirmed.  This case is remanded to the trial court for enforcement of its judgment and for collection of costs assessed below, all pursuant to applicable law.  Costs on appeal are taxed against the appellant, Dorian Jones.


_____
CHARLES D. SUSANO, JR., JUDGE