**CITY OF CHATTANOOGA, Appellant,**

v.

**Jeffery S. MYERS, Appellee.**

Supreme Court of Tennessee,
at Knoxville.

April 2, 1990.

Eugene N. Collins, City Atty., Phillip A. Noblett, Sp. Counsel for City of Chattanooga, Chattanooga, for appellant.

John E. Herbison, Nashville, for appellee.

## OPINION

COOPER, Justice.

The issue in this case is whether a defendant, who has been convicted of a violation of a city ordinance, is entitled to a jury trial on appeal of the judgment of the municipal court, where demand for a jury trial is made in accordance with Rule 38.03 of the Tennessee Rules of Civil Procedure.

The defendant was charged with violation of the "Adult–Oriented Establishment Ordinance" of the City of Chattanooga. The ordinance defines an "adult-oriented establishment," provides for their licensing, and proscribes certain acts and conduct. Section 14(g) of the ordinance requires the maintenance of visibility, from the common area of the premises, of all cubicles and stalls. The ordinance also provides for a fine not exceeding $50.00 for each violation and "for the suspension or revocation of any permit or license" issued the violator by the City of Chattanooga. On trial in the city court defendant was found guilty and fined $25.00. On appeal to the Criminal Court of Hamilton County,[1] he demanded a jury trial. Relying on the decision of *City of Gatlinburg v. Goans*, 600 S.W.2d 735 (Tenn. Ct.App.1980), the trial court denied a trial by jury but granted defendant's request for an interlocutory appeal under Rule 9, T.R.A.P. On appeal, the Court of Appeals, citing cases from this Court conflicting with *Goans*, overruled its holding in that case, held that the defendant was entitled to a jury trial, and reversed the trial court.

This Court granted the City of Chattanooga's application for permission to appeal.

In *Briggs v. City of Union City*, 531 S.W.2d 106 (Tenn.1975), this Court considered the basic issue presented in this case: that is, whether a defendant convicted of the violation of a city ordinance (in *Briggs* an ordinance against "driving-while-under-the-influence") is entitled to a jury trial upon appeal to the circuit court. The Court held that he was and explained its conclusion as follows:

In *Metropolitan Government v. Allen*, 529 S.W.2d 699 (Tenn.1975), we reviewed

1. An appeal from the municipal court of the City of Chattanooga is to "the circuit [criminal] court of Hamilton County." Sec. 4.1 of the Chattanooga City Charter.

the major former decisions of this Court and held that cases involving violation of city ordinances are not criminal prosecutions; that they are civil in nature having as their object the vindication of domestic regulations; that they are in the nature of actions for debt; and that on appeal to the Circuit Court they are "triable *de novo* in the circuit court in precisely the same manner and under the same procedural rules as those governing tort actions instituted in the General Sessions Courts, to include the right to a jury trial." We reaffirm this holding. We do not hold that this should be the law; only that it is, under our existing constitution and statutes.

*Id.* at 107.

The only case cited by the Court as authority for its holding was *Metropolitan Government of Nashville & Davidson County v. Allen*, 529 S.W.2d 699 (Tenn. 1975), in which the issue was: Who should serve as the clerk of the General Sessions Court of Metropolitan Nashville and Davidson County? The Metropolitan General Sessions Court had been divided into nine parts, parts VII–IX serving as a successor to the old metropolitan court, which had heard and determined cases involving violation of an ordinance and traffic violations. Three clerks served the general sessions court: one for the "criminal court part," a second for "civil cases," and a third for "metropolitan warrants and procedures." In determining whether the Clerk of the Criminal Court of Davidson County or the Circuit Court Clerk should handle the "metropolitan warrants and procedures," this Court concluded that the Circuit Court Clerk should have this duty inasmuch as cases involving "metropolitan warrants and procedures" are civil in nature. After discussing recent federal and state decisions holding that the principles of double jeopardy applied to proceedings to recover fines for the violation of municipal ordinances, the Court noted:

Procedurally, cases involving violation of city ordinances continue to be civil in nature. *Bristol v. Burrow*, 73 Tenn. 128 (1880) and *Deitch v. Chattanooga*, 195 Tenn. 245, 258 S.W.2d 776 (1953).

They are in the nature of an action for debt. *Memphis v. Smthye*, 104 Tenn. 702, 58 S.W. 215 (1900). They are not criminal prosecutions, but are merely penal actions having as their object the vindication of domestic regulations. *Guidi v. Memphis*, 196 Tenn 13, 263 S.W.2d 532 (1953). They are governed by rules in civil cases including the right to retrial on appeal to the circuit court where the matter will be heard de novo. *O'Dell v. City of Knoxville, supra.*

An appeal for the violation of a municipal ordinance is a civil action, triable *de novo* in the circuit court in precisely the same manner and under the same procedural rules as those governing tort actions instituted in the General Session Courts, to include the right to a jury trial. But, as held in *Miles*, the rules of double jeopardy apply to preclude an appeal from a judgment of acquittal. This seemingly incongruous result is mandated by the holding of the Supreme Court of the United States in *Waller v. Florida*, 397, U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970), and is supported by other cases cited in [*Metropolitan Government of Nashville & Davidson County v. Miles*, 524 S.W.2d 656 (Tenn.1975)].

*Id.* at 707.

Five years later in *City of Gatlinburg v. Goans*, 600 S.W.2d 735 (Tenn.App.1980), the identical question was presented to the Court of Appeals in a case where the defendant had been found guilty by the City Recorder of Gatlinburg of public drunkenness and carrying a dangerous weapon and fined $20 and $25 respectively. On appeal to the Sevier County Circuit Court defendant had unsuccessfully demanded a jury under Article I, Sections 6 and 9, of the Tennessee Constitution and the Seventh Amendment to the United States Constitution. The Court of Appeals, without mentioning this Court's decision in *Briggs*, rejected the defendant's position.

Our courts have consistently held that persons charged with petty offenses and violation of city ordinances are not, as a matter of right, entitled to a trial by jury under the provisions of the State or Federal Constitutions. See *Pass v. State*, 181 Tenn. 613, 184 S.W.2d 1; *O'Dell v. City of Knoxville*, 54 Tenn. App. 59, 388 S.W.2d 150 (1964); *Howard and Von Drake v. State*, 143 Tenn. 539, 227 S.W. 36; *Dyke v. Taylor Implement Mfg. Co.*, 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); and *Taylor Implement Mfg. Co. v. United Steelworkers*, 219 Tenn. 472, 410 S.W.2d 881 (1966).

*Id.* at 736.

As can be seen, the *Goans* court relied upon an almost completely different line of cases than that cited in *Allen* and thereby inferentially relied upon in *Briggs*. Examination of these two lines of authority show that they are not necessarily inconsistent, since they address completely different issues.

The *Allen–Briggs* authorities trace back to this Court's decision in *Meaher v. Mayor and Aldermen of Chattanooga*, 38 Tenn. 75 (1858), in which the city recorder issued a "warrant in debt" against Meaher "in consequence of a forfeiture, or penalty" incurred for keeping "a disorderly house" in violation of a city ordinance. Meaher was fined $20 and took the case by certiorari to the circuit court, where it was dismissed. Defendant argued that he had to be "convicted" of the "misdemeanor" before an action for the forfeiture would lie.

This Court held two actions unnecessary and stated,

> As part of the case—the very foundation of it—the offence would have to be made out before the recorder. How could there be a separate proceeding? There was no power to indict—the city can only operate by fines, forfeitures and penalties, and then to be recovered by warrant. If the fine, forfeiture, or penalty—for the name is not so material—is fixed by the ordinance, for any particular thing, that may be recovered by warrant, and the only proof required is, that the offence, or act to which such fine or forfeiture is attached, has been committed. <u>Debt is the proper action for penalties prescribed for certain offences, by acts or ordinances. This is well settled law, and has been recognized at the present term.</u> Emphasis supplied.[2]

The underlined part of the above quote was relied upon by this Court in *Wood v. Mayor and Aldermen of Grand Junction*, 52 Tenn. 440 (1871), in holding that an appeal by Wood would lie to the circuit court from a judgment for $25 rendered by the mayor against Wood for breach of peace in violation of the city's by-laws. Under the authority of *Meaher*, the Court held that "the warrant may well be treated in this case as an action for recovery of the penalty imposed by the statute, and that the act of the Legislature [Ch. 85, Acts 1869–1870, predecessor of T.C.A. § 27–5–101 and 102[3]] was passed probably in view of this decision, and was intended

---

**2.** Slightly over a half-century later, this Court stated in *Deming v. Nichols*, 135 Tenn. 295, 186 S.W. 113, 114 (1916), that there were "two modes" in this country to enforce penal ordinances: an action of debt to recover the penalty and "the ancient and familiar summary proceeding on information and complaint." At common law the action was, in form, either debt or assumpsit and brought merely to recover the penalty imposed for violation of the ordinance. In assumpsit, the theory was that there had been a breach of duty; and by legal fiction it was assumed the defendant had promised the municipal corporation, which in most cases became the plaintiff, to perform the duty. The action of debt was allowable, as the penalty was

for a sum certain in the nature of liquidated damages.

**3.** Section 27–5–101: "Any person dissatisfied with the judgment of a recorder or other officer of a municipality charged with the conduct of trials, in a civil action, may, within ten (10) entire days thereafter, Sundays exclusive, appeal to the next term of circuit court." [Prior to 1959 this statute, then § 27–501, also covered appeals from judgments of justices of the peace. *See Biggs v. Memphis Loan & Thrift Co.*, 215 Tenn. 294, 385 S.W.2d 118 (1964).]

Section 27–5–102: "Any party disatisfied [sic] with the judgment of a recorder or officer of a municipal corporation charged with the trial of

to give the right of appeal in such cases...." *Id.* at 442–443. Under the Act an appeal would lie "under same rules and restrictions as in like cases before a Magistrate, that is, in cases of judgments for debt or money." *Id.*

*Meaher* and *Wood* formed the basis for subsequent holdings by this Court based upon the principle that proceedings to recover a fine or penalty for a violation of a municipal ordinance are civil in character, being in the nature of an action of debt. For example, in *Mayor and Aldermen of Bristol v. Burrow*, 73 Tenn. 128 (1880), this Court held that upon defendant's appeal to the circuit judge for a new trial the mayor should be allowed to amend the warrant to show that the offense charged was not "affray," a common-law offense of which the mayor who had tried defendant had no jurisdiction, but "disorderly conduct." This was permissible because the matter was a civil proceeding, a suit to recover a penalty, brought in the name of the mayor and aldermen and not of the State and thus an amendment would not change the entire nature of the complaint. The proceeding was considered civil, the Court stated, despite the fact that the same acts prohibited by the ordinance and by-laws may also be criminal offenses against the State. This rule, i.e., that the proceeding is civil, was also relied upon in *City of Memphis v. Smythe*, 104 Tenn. 702, 58 S.W. 215 (1900), as a basis for the Court's holding that there was no double jeopardy violation in the appeal by the city from a dismissal by the circuit court of a charge that defendant had violated a city health ordinance. The Court made no distinction between "penal" ordinances and "health" ordinances in deciding the question but simply followed the *Meaher* rule that such actions were civil.

Language directly pertinent to the issue in the present case is found in *Sparta v. Lewis*, 91 Tenn. 370, 23 S.W. 182 (1892), in which the defendant was found guilty on a warrant for assault and battery in violation of a city ordinance and fined $10 by the city recorder. Defendant appealed to circuit court, where, *after trial before a jury*, judgment was rendered in defendant's favor and the corporation appealed to the Supreme Court. The issue was what evidentiary standard (preponderance of the evidence or beyond a reasonable doubt) applied on the appeal to circuit court. The Court held that the preponderance standard applied because

> The action is not a criminal prosecution. It is not a trial between the state and defendant, nor on presentment or indictment by and before a jury.... But this is in the nature of a suit for debt. It is not a prosecution, but a suing in court to recover a penalty for the violation of a city ordinance. The case was triable before a recorder. *On appeal it was in fact tried by a jury, it is true, but only as all civil cases are or may be*, but not on presentment or indictment.... Cases merely involving civil redress for criminal offenses need only be made out by a preponderance of evidence. (Emphasis supplied.)

*Id.* at 374, 23 S.W. 182. The Court did say, however, that due allowance must be given in defendant's favor of the legal presumption of innocence of crime and proof of good character, when proven.

The next case of importance is *O'Haver v. Montgomery*, 120 Tenn. 448, 111 S.W. 449 (1908), which in the past was the "leading case" on the question of whether proceedings for the violation of municipal ordinances are civil or criminal. *O'Haver* expressly recognized that such actions share the characteristics of both criminal and civil actions. The issue there was whether the municipality could constitutionally imprison a person for nonpayment of a fine.[4] In holding that it could, the Court discussed the nature of these proceedings:

---

causes may appeal to the next circuit or special court, in all cases in which an appeal is allowed from the judgment of a judge of the court of general sessions, and subject to the same terms and restrictions."

4. Montgomery had been fined $50 by the city judge for failing and refusing to lay a granolith sidewalk in front of his lot in violation of city ordinance. After being jailed for failure to pay the fine, he brought a petition for habeas corpus

It is true that in several cases [*Meaher, Wood, Mayor of Bristol v. Burrow; Memphis v. Smythe, supra*] actions of the kind by municipal corporations are called, in some of them civil actions, and in others quasi civil actions, and it is said that appeals lie from recorders' courts as in civil cases, and that the mode of trial is the same; ... In the cases now referred to the court was considering merely the question of practice as to the right of appeal, and the mode of trial in the circuit court. In truth, when a violator of a municipal ordinance is arrested and brought before the municipal court, he is tried for an offense committed against the laws of the corporation; but, in the absence of apt legislation to the contrary, his punishment is in the form of the assessment of a penalty. The practice partakes of both a civil and criminal character. He is arrested on warrant as in criminal cases, and if found guilty a judgment is entered against him as for a fine, and on failure to pay the amount assessed against him he may be held in custody until he pays or secures it, or be put at labor to pay it. If dissatisfied with the judgment he may appeal, as in civil cases, upon complying with the law or statute applicable, and may have a retrial in the circuit court, where the matter will be heard de novo, the rules of practice applicable to civil cases applying in such trial; but at last the purpose of the action is punishment. So it is perceived the action is partly criminal and partly civil; a criminal action in substance and purpose, and partly civil and partly criminal in the practice governing it. When we characterize the action as being of a criminal nature, we do not mean to be understood as using the term wholly in the sense in which it is applicable to actions brought by the state in the form of indictments and presentments for violations of the criminal laws of the state, but rather by analogy, and for want of a better term. *State v. Haynes*, 104 Tenn. 406, 409, 58 S.W. 120. A mu-

nicipality is a government within itself, and must have the power to punish for offenses against its laws, and must be able to bring that punishment to bear and to make it effective by its own agencies—that is, through its own courts and officers. However, the right of appeal may be given, and generally is given and, if exercised, the municipality appears in another jurisdiction; that is, in the courts of the state, as a suitor to recover the penalty which it has assessed against the violator of its laws. But the larger court, while trying the controversy as a civil suit, will see to it that the municipality, if successful, shall have there the same sanctions for the enforcement of its laws as if the trial had terminated in the municipal court. In truth, the action is in its various aspects a hybrid one, partly criminal and partly civil.

*Id.*, 111 S.W. at 451–452.

*O'Haver* was relied upon in *Deming v. Nichols*, 135 Tenn. 295, 186 S.W. 113 (1916), in which the Court held that a defendant being incarcerated by a municipality for nonpayment of fine for carrying a concealed weapon, must, despite his oath of indigency, continue to be held by the municipal authorities pending appeal to circuit court unless he gave a bail bond in a sufficient amount to appear and perform whatever judgment might be rendered by the appellate court. The Court stated,

"Sometimes the action is regarded as criminal, especially where the offense constitutes a misdemeanor under the laws of the state. Such proceeding is civil in form and quasi criminal in character. It is governed by the rules of pleading applicable to civil actions, but if it were solely civil, no fine or imprisonment could be inflicted. It is therefore a quasi civil and criminal action. Partaking of some of the features of each, its similitude to either is not complete. In pleading it is more like a civil action, but in its effect and consequences it more nearly resembles a criminal proceeding."

challenging the constitutionality of the ordi-

nance and his imprisonment thereunder.

McQuilian, Municipal Corporations, § 1034.

\* \* \* \* \* \*

On appeal from the city court to the state court the trial is de novo and in the same manner as trials on appeal from a justice's court to the circuit or district court. The circuit court is to try the case with the same discretion as the recorder himself did and may in its discretion reduce the fine. [Citations omitted.]

*Id.,* 186 S.W. at 114. Interestingly the *Deming* court reached its holding by analogizing this "quasi-civil" case to the procedure followed in criminal cases involving the violation of a state law.

The *"Meaher* rule" continued to form the basis for several decisions of this Court and the Court of Appeals over the next fifty years.[5] None of these cases examined the nature and purpose of the ordinance being enforced in determining whether rules of civil or criminal procedure should apply. Their *ratio decidendi* was simply that actions to recover fines for the violation of a municipal ordinance are generally civil or quasi-criminal in nature.

A perusal of these cases shows that the decisions in some (*e.g.* no right against

self-incrimination) may now be questionable, but the clear rule to be gleaned from all of these cases is that, as far as general procedural matters and matters of appeal were concerned, these actions were considered civil in nature. Although none of these cases dealt directly with the issue presently under consideration, it is likewise evident that in some defendants were given juries on appeal to the circuit court because the appeals were civil. This rule, however, was called into question by this Court's decision in *Metropolitan Government of Nashville & Davidson County v. Miles,* 524 S.W.2d 656 (Tenn.1975), decided earlier in the same year in which *Allen* and *Briggs* were decided.

In *Miles* the Court accepted the argument that the constitutional provisions against double jeopardy precluded an appeal to circuit court by the Metropolitan Government from a dismissal on the merits by the general sessions court of a prosecution for the violation of a municipal ordinance prohibiting interfering with a police officer. Relying on *O'Haver* and *O'Dell, supra,* the Metropolitan Government argued that such an appeal was constitutional because the proceeding was civil and not criminal. Justice Brock writing for a three

---

5. *See Aizenshtatt v. Mayor and Aldermen of the City of Jackson,* 1 Tenn. Civ. App. 805 (1911) (pleading requirements not as strict in these cases as in criminal cases so that warrant was sufficient; opinion reflects that defendant received a jury trial on appeal to circuit court; $50 fine for selling beer after lawful hours); *City of Nashville v. Baker,* 167 Tenn. 661, 73 S.W.2d 169 (1934) (prosecution for violation of a city ordinance need not be begun by a warrant issued on oath since the action is a civil or quasi-criminal matter; $50 fine for receiving, possessing, and transporting intoxicating liquor); *Deitch v. City of Chattanooga,* 195 Tenn. 245, 258 S.W.2d 776, 777 (1953) (appeal from conviction under city ordinance against gaming was a civil appeal so that assignments of error controlled the scope of review; also held that right against self-incrimination was not involved in action for violation of a city ordinance); *Guidi v. City of Memphis,* 196 Tenn. 13, 263 S.W.2d 532 (1953) ($20 fine for speeding, challenge to sufficiency of warrant based on criminal cases inapplicable because proceeding is civil or quasi-criminal and warrant in case was only "civil process"); *Robinson v. City of Memphis,* 197 Tenn. 598, 277 S.W.2d 341 (1955)

(sufficiency of warrant determined under standard applied to warrants originating in the justice of the peace court because such proceedings governed by rules of pleading applicable to civil actions in that court); *O'Dell v. City of Knoxville,* 214 Tenn. 237, 379 S.W.2d 756 (1964) (violation of ordinance against driving while intoxicated a civil case for purposes of appeal to this Court and, in absence of falling within any of the exceptions granting a direct appeal to the Supreme Court in civil cases, the case was transferred to the Court of Appeals, which at 54 Tenn. App. 59, 388 S.W.2d 150 (1964), held that the $100 "fine" against the defendant was not unconstitutional under Art. VI, Section 14, of the Tennessee Constitution, since it was a "penalty" imposed in a civil action); and *Mullins v. State,* 214 Tenn. 366, 380 S.W.2d 201 (1964) (guilty plea and $50 fine in the Johnson City Police Court did not bar subsequent prosecution in Criminal Court for driving while intoxicated based upon same acts violating city ordinance because, in part, violation of "quasi-criminal" and "neither fish nor fowl.")

judge majority held, however, that *O'Haver* and *O'Dell* had been "at least impliedly" overruled by *State v. Jackson,* 503 S.W.2d 185 (Tenn.1973), where it was held that a juvenile who had been found not guilty in a "civil" proceeding in juvenile court could not be tried again for the same offense upon an appeal *de novo* to the circuit court. Stating that the test for double jeopardy purposes must be "the nature and essence of the proceeding rather than its title," the Court cited federal case law to support its conclusion that double jeopardy applied. The Court then held

> that a proceeding in a municipal court for the imposition of a fine upon a person for allegedly violating a city ordinance is criminal rather than civil in substance, in that, it seeks punishment to vindicate public justice and, therefore, constitutes jeopardy under the double jeopardy clauses of the Tennessee and Federal Constitutions ...

*Id.* at 660.

In a concurring and dissenting opinion, Justice Harbison noted the long line of Tennessee cases, just discussed, which traditionally held that proceedings for the violation of a city ordinance are civil for purposes of appeal and procedure and opined "that these rules are not affected by the present holding, according to my understanding." This position was approved by the Court in *Metropolitan Government of Nashville & Davidson County v. Allen, supra,* 529 S.W.2d at 706–707, wherein it was remarked that the language of the majority in *Miles* "may have been overbroad" when it mentioned the "implied" overruling of *O'Haver* and *O'Dell,* and suggested that *O'Haver* and *O'Dell* were "not authority" for the double jeopardy question decided in *Miles* and that there was no conflict between those cases and *Miles* in holding that proceedings involving violation of city ordinances are at least procedurally, civil in nature.

It is evident from examination of the above cases, then that the long-standing, traditional rule in Tennessee, based upon interpretation of the predecessor of the present T.C.A. § 27–5–102 allows a defendant a jury trial on an appeal to the circuit court from a judgment of a municipal court based on the violation of a city ordinance, provided a jury trial is timely demanded.

The cases cited to the contrary begin with this Court's decision in *Trigally v. Mayor and Aldermen of Memphis,* 46 Tenn. 382 (1869), in which the defendant had been found guilty of drunkenness in violation of a city ordinance by the Police Commissioner and had appealed to the municipal court, which affirmed. Defendant unsuccessfully demanded a jury trial *in the municipal court* (not upon appeal to the circuit court) based upon Article I, Section 6, of the Tennessee Constitution.

Upon appeal, this Court noted that the meaning of Section 6 was that the right of trial by jury shall remain inviolate *as it existed at the formation of the Constitution* but that at that time "divers actions between private persons, and prosecutions by the state for small offenses, were triable without a jury." In deciding that defendant had no right to a jury trial in municipal court, this Court never seemed to distinguish between offenses against a municipality and those against the state nor did it mention in its decision on this point or on other points (such as the right of confrontation in the municipal court) the rule formulated ten years earlier in *Meaher, supra,* that proceedings involving the violation of a city ordinance are civil proceedings for the recovery of a debt. It should be noted, however, that *Trigally* involved not the right to a jury on appeal and trial *de novo* in circuit court granted by Public Act in 1870 but the right to a jury trial in the first instance in municipal court.

Other cases cited by the appellant are inapposite as they do not deal with the right to a jury trial on appeal from a municipal ordinance. Most involve what are clearly "small offenses," violations of state

statutes [6] as distinguished from violations of municipal ordinances, which are not state prosecutions for crime. *See State v. Mason,* 71 Tenn. 649 (1879) (holding that state could not collect tax levied on "criminal cases" on suits tried before a mayor for violations of city-by-laws and ordinances.) Several of these cases *Pass v. State,* 181 Tenn. 613, 184 S.W.2d 1 (1944); *Dyke v. Taylor Implement Mfg. Co.,* 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); and *Taylor Implement Mfg. Co. v. United Steelworkers,* 219 Tenn. 472, 410 S.W.2d 881 (1966), involve the right to jury trials in contempt proceedings.

*O'Dell v. City of Knoxville,* 54 Tenn. App. 59, 388 S.W.2d 150 (1964), does involve a municipal ordinance but the issue there was whether the ordinance was unconstitutional because it allowed the city judge to fine defendant $100 without a jury in violation of Article VI, Section 14, of the state constitution. The court held that fines for the violation of a city ordinance are not "fines" within the meaning of that constitutional provision but "penalties" in a civil case, a holding compatible with the *Allen–Briggs* position.

*Capitol News Co. Inc. v. Metropolitan Government of Nashville & Davidson County,* 562 S.W.2d 430, 432 (Tenn.1978), is also not to the contrary because the Court never addressed the question involved here. In *Capitol News Co.* the defendant challenged an ordinance on the ground that it authorized punishment without a jury trial greater than that permitted by state law, essentially the question involved in *O'Dell v. City of Knoxville, supra,* but since the Court interpreted the statute to allow a fine no greater than $50 any conflict with the Tennessee Constitution was avoided. Again, too, this case apparently would have concerned a jury trial upon the first hearing in the Metropolitan General Sessions Court. The case it-

self was a suit for declaratory judgment in chancery court and did not involve an appeal from municipal court.

In summary, for 130 years proceedings to recover fines for the violation of municipal ordinances have been considered civil for the purposes of procedure and appeal, although the principles of double jeopardy have recently been determined to apply in such cases. *See Miles, supra; cf. United States v. Halper,* —— U.S. ——, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (discussing under what circumstances a *civil penalty* constitutes "punishment" for the purposes of double jeopardy analysis). The basis of the cases, accepted in *Allen–Briggs,* is that an appeal to circuit court of a judgment of a municipal court—even when the defendant is the appellant—is an appeal in a civil action brought by the municipality to recover a "debt." Being such, where requested, the appealing defendant is entitled to a jury trial as in any other civil case, despite the fact that no direct penalty of imprisonment or fine greater than $50 is involved.

The judgment of the Court of Appeals is affirmed, with costs incident to the appeal being adjudged against the City of Chattanooga. The case is remanded to the trial court for further proceedings.

DROWOTA, C.J., and FONES, HARBISON and O'BRIEN, JJ., concur.

---

**6.** *State v. Dusina,* 764 S.W.2d 766 (Tenn.1989), involved a state law against speeding on interstate highways; *Willard v. State,* 174 Tenn. 642, 130 S.W.2d 99 (1939), an indictment for common law misdemeanor of public drunkenness:

*Spurgeon v. Worley,* 169 Tenn. 697, 90 S.W.2d 948 (1936), a state misdemeanor; *State v. Sexton,* 121 Tenn. 35, 114 S.W. 494 (1908), state game laws; and *McGinnis v. State,* 28 Tenn. 43 (1848), state misdemeanor tried in circuit court.