IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 22, 2020 Session

**CITY OF ATHENS v. WILLIAM STRASER[1]**

**Appeal from the Circuit Court for McMinn County**
**No. 2017-CV-241       Lawrence Howard Puckett, Judge**

———————————————————

**No. E2019-02298-COA-R3-CV**

———————————————————

In a direct appeal from the Athens City Court ("municipal court"), the McMinn County Circuit Court ("trial court") determined that the defendant, William Straser, was not entitled to a trial by jury in defense of a citation issued by the plaintiff city. Following a bench trial conducted on November 22, 2019, the trial court further determined that Mr. Straser had erected a carport on his property in violation of a municipal ordinance requiring a thirty-foot minimum setback. Mr. Straser has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Van R. Irion, Knoxville, Tennessee, for the appellant, William Straser.

H. Chris Trew, Athens, Tennessee, for the appellee, City of Athens.

**OPINION**

I.  Factual and Procedural Background

On April 25, 2017, the City of Athens ("the City") issued a citation to Mr. Straser, a resident of the City, alleging that Mr. Straser's carport was in violation of a thirty-foot minimum setback requirement set forth in Section 3.04.03(E) of the Municipal Zoning Ordinance for the City of Athens ("the Setback Ordinance"). Following a hearing, the municipal court entered a judgment on July 3, 2017, determining that Mr. Straser was in

---

[1] Two iterations of Mr. Straser's last name appear in the record. Because the "Straser" spelling appears to predominate, we will employ that spelling in this opinion. No disrespect is intended.

violation of the Setback Ordinance. Mr. Straser timely appealed the municipal court's judgment to the trial court on July 13, 2017.

After retaining new counsel to represent him, Mr. Straser sought and obtained a continuance of the initial trial date. On November 19, 2018, by agreement of the parties, the trial court entered an order rescheduling the matter for a non-jury trial beginning April 22, 2019. Mr. Straser thereafter sought a second continuance of the trial date, submitting as grounds that he was a party to a pending federal lawsuit concerning the same facts, and trial was set for October 2019. The City subsequently filed a response, opposing Mr. Straser's motion for a second continuance and arguing that the federal lawsuit involved issues separate from the instant cause. On March 8, 2019, Mr. Straser lodged a motion seeking permission to file a pleading asserting a counterclaim against the City and a cross-claim against the City's attorney. The City subsequently filed a response opposing the motion.

The trial court conducted a motion hearing on March 18, 2019, and entered an order denying Mr. Straser's second motion for continuance on March 21, 2019. On March 22, 2019, Mr. Straser filed an answer asserting a counterclaim against the City and a cross-claim against the City's attorney. In addition, for the first time, Mr. Straser demanded a jury trial concerning the issues. The City subsequently filed a response on March 29, 2019, opposing Mr. Straser's demand for a jury trial.

On April 1, 2019, the trial court granted leave for Mr. Straser to file an "Answer which may include, admissions, denials, and affirmative defenses." Moreover, the court directed the parties to file briefs concerning the issue of whether Mr. Straser was entitled to a jury trial. The City concomitantly filed a motion to dismiss Mr. Straser's answer containing a counterclaim and cross-claim.

Following a hearing conducted on April 4, 2019, the trial court entered an order on April 15, 2019, regarding the pending motions. The court ruled, *inter alia*:

> The part of the pleading fax filed by Mr. Straser on March 22, 2019 referred to as "Counterclaims" shall be treated by the Court and the parties as a Motion by Mr. Straser to reconsider the Order filed April 1, 2019 stating that Mr. Straser shall not be permitted to file a Counterclaim against the City of Athens alleging a violation of federal laws. The part of the pleading referred to as a "Crossclaim" against Mr. Trew shall be treated by the Court and the parties as a Motion by Mr. Straser to file a pleading to add Mr. Trew as a party to this case.

The court further concluded that the hearing scheduled for April 22, 2019, would not be a trial on the merits; rather, the court would conduct a motion hearing to consider the

referenced issues as well as to resolve the question of whether Mr. Straser had timely demanded a jury trial.

The record, *inter alia*, contains documents, initially attached to the City's March 29, 2019 response, from a separate lawsuit filed in federal court by Mr. Straser against the City and certain officials of the City, wherein Mr. Straser alleged violations of his constitutional right to equal protection and other claims based on federal law. The federal court ultimately dismissed Mr. Straser's claims, granting summary judgment in favor of the defendants. On September 4, 2019, following the federal court's grant of summary judgment, the trial court entered an order determining that Mr. Straser could not amend his answer to add a counterclaim against the City based on federal law. The trial court also denied a request by Mr. Straser to add the City's attorney as a party. With regard to Mr. Straser's demand for a jury trial, the trial court determined that Mr. Straser's request was untimely and declined to "exercise any discretion permitted by Rule 39.02 of the Tennessee Rules of Civil Procedure to allow a jury trial when [Mr. Straser had] not made a timely demand pursuant to Rule 38.03." The trial court therefore denied Mr. Straser's request for a trial by jury.

On November 1, 2019, Mr. Straser filed a motion seeking to have the municipal ordinance at issue declared unconstitutionally vague. According to Mr. Straser, although the ordinance required a thirty-foot minimum setback for structures, it failed to specify the location from which such measurement would be taken. The City filed a response in opposition to Mr. Straser's motion, asserting that the municipal ordinance language was not vague because Mr. Straser's property lines could be determined from his deed.

The trial court ultimately conducted a *de novo* bench trial concerning this matter on November 22, 2019. Through its final judgment entered on December 16, 2019, the trial court determined that the Setback Ordinance was not unconstitutionally vague and that Mr. Straser had constructed his carport in violation of the thirty-foot setback established by the applicable municipal ordinance. Mr. Straser timely appealed.

## II. Issues Presented

Mr. Straser presents the following issues for review, which we have restated slightly as follows:

1.      Whether the trial court erred by denying Mr. Straser's demand for a trial by jury.

2.      Whether the trial court erred by declining to find the subject municipal ordinance to be unconstitutionally vague.

### III.  Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness. *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

Concerning Tennessee Rule of Civil Procedure 39.02, this Court has explained, "The plain words of 39.02 give the Trial Judge discretionary power to allow a trial by jury regardless of previous default in demand." *Silcox v. Smith Cty.*, 487 S.W.2d 652, 658 (Tenn. Ct. App. 1972). As our Supreme Court has explained:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Resp.,* 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper,* 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.,* 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.,* 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins,* 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.,* 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

> Discretionary decisions must take the applicable law and the relevant facts into account. *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.,* 249 S.W.3d 346, 358 (Tenn. 2008); *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn. 1996). An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. *State v. Lewis,* 235 S.W.3d 136, 141 (Tenn. 2007). A court abuses its

discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence. *State v. Ostein,* 293 S.W.3d 519, 526 (Tenn. 2009); *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.,* 249 S.W.3d at 358; *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville,* 154 S.W.3d [22,] 42 [(Tenn. 2005)].

> To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower courts discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions. *Flautt & Mann v. Council of Memphis,* 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF, a Div. of Gen. Signal Controls, Inc. v. Service Constr. Co.,* No. 87-136-II, 1988 WL 72409, at *3 (Tenn. Ct. App. July 13, 1988) (No Tenn. R. App. P. 11 application filed)). When called upon to review a lower court's discretionary decision, the reviewing court should review the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and should review the lower court's legal determinations de novo without any presumption of correctness. *Johnson v. Nissan N. Am., Inc.,* 146 S.W.3d 600, 604 (Tenn. Ct. App. 2004); *Boyd v. Comdata Network, Inc.,* 88 S.W.3d at 212.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524-25 (Tenn. 2010).

## IV.  Demand for Jury Trial

First, we address Mr. Straser's contention that the trial court erred by denying his demand for a jury trial. Tennessee Rule of Civil Procedure 38.03 governs a party's right to demand a trial by jury in cases removed to circuit or chancery courts. Rule 38.03 provides:

> In cases removed by appeal or otherwise to the chancery or circuit courts or to courts of similar jurisdiction, any party may demand a trial by jury of any issue triable of right by jury by filing written demand for jury trial within 10 days after the papers are filed with the clerk. If such a case is set for trial within 10 days after the papers are filed with the clerk, any party may make demand for jury trial when the case is called for trial. In every case removed to the chancery or circuit courts or to courts of similar jurisdiction the clerk shall promptly give notice to the appellee of the filing of the papers.

In addition, Tennessee Rule of Civil Procedure 38.05 states: "The failure of a party to make demand as required by this rule constitutes a waiver by the party of trial by jury." On appeal, Mr. Straser initially argues that Rule 38.03 did not apply to his jury demand and that the trial court therefore erred by denying his demand upon determining that he had failed to comply with Rule 38.03's ten-day requirement. Respectfully, we disagree.

This action originated in municipal court and was timely appealed to the trial court pursuant to Tennessee Code Annotated § 27-5-102 (2017). Pursuant to the plain language of Rule 38.03, this action clearly constitutes a case "removed by appeal . . . to the chancery or circuit courts." Moreover, our Supreme Court has previously addressed the issue of "whether a defendant, who has been convicted of a violation of a city ordinance, is entitled to a jury trial on appeal of the judgment of the municipal court, where demand for a jury trial is made in accordance with Rule 38.03 of the Tennessee Rules of Civil Procedure." *City of Chattanooga v. Myers*, 787 S.W.2d 921, 921 (Tenn. 1990) (emphasis added). In *Myers*, the defendant appealed a municipal court's judgment finding him guilty of violating a city ordinance to the circuit court. *Id*. Following the defendant's request for a jury trial, the trial court denied the request but granted the defendant's request for interlocutory review. *Id*.

On appeal, this Court determined in *Myers* that the defendant was entitled to a jury trial and reversed the trial court. *Id*. Upon granting permission to appeal, our Supreme Court held, based in part on interpretation of a predecessor statute to Tennessee Code Annotated § 27-5-102, that a party is entitled to "a jury trial on an appeal to the circuit court from a judgment of a municipal court based on the violation of a city ordinance, provided a jury trial is timely demanded." *Id*. at 927 (emphasis added). Our review of *Myers* indicates that the Supreme Court, when determining whether the *Myers* defendant made a timely request for a jury trial on appeal from the municipal court, applied Rule 38.03's ten-day requirement. *Id*. at 921.

This Court has since applied Rule 38.03's ten-day requirement in a similar circumstance. *See City of Jackson v. Bledsoe*, 830 S.W.2d 71, 73 (Tenn. Ct. App. 1991), *perm. app. denied* (Tenn. Mar. 16, 1992). The *Bledsoe* defendant appealed from a municipal court judgment finding him guilty of a speeding violation predicated on the city's municipal code. *Id*. at 72. The circuit court dismissed the appeal as untimely. *Id*. On appeal from the circuit court judgment, the defendant argued that he was denied a right to trial by jury in violation of the United States Constitution. *Id*. This Court affirmed the circuit court's dismissal and determined that

if [the defendant] had timely appealed from the city court to the circuit court he would have been required to file a written demand for jury trial within ten days after the case was docketed in the circuit court clerk's office. Rule

- 6 -

> 38.03, Tenn. R. Civ. P. Failure to make the demand as required by the rule constitutes a waiver of a trial by jury. Rule 38.05, Tenn. R. Civ. P.

*Id.* at 73.

Upon our review of *Myers* and *Bledsoe*, we reach the conclusion that Rule 38.03 controls a party's demand for a jury trial when the action has been appealed from a municipal court, such as in the case at bar.[2] Rule 38.03 requires a party to make a written demand for a jury trial within ten days after the papers are filed with the clerk of the chancery or circuit court. Mr. Straser's notice of appeal to the trial court was filed on November 13, 2017. He presented his first written demand for a jury trial on March 22, 2019. Mr. Straser had previously agreed to set the case for a non-jury trial via an agreed order entered by the trial court on November 19, 2018. The trial court subsequently found in its September 4, 2019 order that Mr. Straser did not timely request a jury trial. Inasmuch as Mr. Straser's jury demand was made more than one year following the docketing of the case with the trial court clerk's office, we determine that the trial court correctly concluded that Mr. Straser's demand for a jury trial was untimely and accordingly waived pursuant to Rule 38.05.

In his brief on appeal, Mr. Straser advances an ostensible argument that the trial court should have exercised its discretion to grant a jury trial, pursuant to Tennessee Rule of Civil Procedure 39.02, notwithstanding any untimeliness of his request under Rule 38. Rule 39.02 provides:

> Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury as to any issue with respect to which demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues.

As stated above, a trial court's decision whether to grant a jury trial notwithstanding the failure of a party to demand a jury trial is discretionary. *Silcox*, 487 S.W.2d at 658. In the case at bar, the trial court declined to exercise such discretion under Rule 39.02, and we find nothing in the record to demonstrate that the trial court abused its discretion in this regard. To reiterate, Mr. Straser waited in excess of a year before making his first jury demand. Moreover, he consented to setting the case for a non-jury trial as evinced by the November 19, 2018 agreed order. Ergo, we determine Mr. Straser's argument that the trial court erred by declining to exercise discretion to allow a jury trial under Rule 39.02 to be unavailing.

---

[2] We note that appeals to the circuit court from municipal courts are to be treated as appeals from general sessions courts. *See* Tenn. Code Ann. § 27-5-102.

Mr. Straser further asserts that construing Rule 38.03 to be the predominant and controlling rule in the instant action would lead to an impermissible conflict with Tennessee Rule of Civil Procedure 38.02. Rule 38.02 provides:

> Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 or by endorsing the demand upon such pleading when it is filed, or by written demand filed with the clerk, with notice to all parties, within 15 days after the service of the last pleading raising an issue of fact.

Mr. Straser essentially posits that Rules 38.02 and 38.03 should be considered and applied congruently. Such construction, Mr. Straser contends, is supported by Tennessee Code Annotated § 16-15-729 (2009), which governs cases appealed from a general sessions court.

> Tennessee Code Annotated § 16-15-729 provides:
>
> No civil case, originating in a general sessions court and carried to a higher court, shall be dismissed by such court for any informality whatever, but shall be tried on its merits; and the court shall allow all amendments in the form of action, the parties thereto, or the statement of the cause of action, necessary to reach the merits, upon such terms as may be deemed just and proper. The trial shall be de novo, including damages.

Based on the language of § 16-15-729, Mr. Straser claims that because all amendments in the form of action are permitted, his March 22, 2019 answer containing a jury demand should be allowed under Rule 38.02 as an amendment. Mr. Straser contends that under a determination that Rule 38.03 controls, "[t]he appellant would have a statutory right to file a pleading raising new issues of fact," pursuant to § 16-15-729, "but would be prohibited from demanding a jury despite falling within the explicit language of [Rule] 38.02," leading to an impermissible conflict. We determine this argument to be unavailing.

Mr. Straser does not cite and our research has not revealed any precedent recognizing the simultaneous or tandem application of Rules 38.02 and 38.03. Moreover, our research has not identified any precedent instructing that Tennessee Code Annotated § 16-15-729 may be incorporated to circumvent the ten-day requirement for a jury demand mandated in Rule 38.03, which, as we have determined, applies to actions appealed from municipal courts to circuit courts, such as the one at bar. *See Bledsoe*, 830 S.W.2d at 73. We therefore conclude that the trial court did not err by determining that Mr. Straser's request for a jury trial was untimely, pursuant to Rule 38.03, and thereby waived under Rule 38.05.

- 8 -

V.  Constitutional Challenge[3]

Mr. Straser also contends that the trial court erred by declining to find that the Setback Ordinance was unconstitutionally vague.  The specific language of the Setback Ordinance provides in Chapter 3, Section .04, subsection .03:[4]

E.      **Dimensional Regulations:**

All uses permitted in the R-2 Medium Density Residential District shall comply with the following requirements except as provided in Chapter 5 and in Chapter 4, Section 4.18 for townhouses and patio homes.

1.      **Front Yard:**

The minimum depth of the front yard shall be thirty (30) feet.

Additional definitions applicable to the Setback Ordinance provide:

**2.02.  DEFINITIONS.**

The following words, terms, and phrases are hereby defined as follows and shall be interpreted as such throughout this ordinance.  Terms not herein defined shall have the meaning customarily assigned to them:

---

[3] The trial court's December 16, 2019 order indicated that the court made "Findings of Fact and Conclusions of Law as shown in the Memorandum Opinion of the Court filed herewith."  However, no such memorandum appears in the appellate record.  The record reflects that upon conclusion of the November 22, 2019 trial, the trial court rendered oral pronouncements, which were transcribed and included in the transcript of proceedings.  A trial court's oral pronouncements, if made a part of the written judgment through incorporation by reference, become a part of the judgment and reviewable as such. *See, e.g., Shelby v. Shelby*, 696 S.W.3d 360, 361 (Tenn. Ct. App. 1985) ("We do not review the Court's oral statements, unless incorporated in a decree . . . ."); *Sparkle Laundry & Cleaners, Inc. v. Kelton*, 595 S.W.2d 88, 93 (Tenn. Ct. App. 1979) ("[N]o oral pronouncement is of any effect unless and until made a part of a written judgment duly entered.").  Notwithstanding the absence of a Memorandum Opinion containing the trial court's findings and conclusions, we can ascertain the trial court's findings and conclusions from the November 22, 2019 trial transcript included in the appellate record, particularly with regard to the trial court's determination that the Setback Ordinance was not unconstitutionally vague.  Thus, the oral findings here are sufficiently detailed to enable appellate review.

[4] This Court entered an order on June 16, 2020, allowing the City to supplement the appellate record with a complete copy of the relevant portions of the Municipal Zoning Ordinance for the City of Athens, Tennessee, which was previously represented by an exhibit in the record.  We note that the applicability of the Setback Ordinance, particularly the applicability of the section, "R-2 Medium Density," to Mr. Straser's property is undisputed by the parties.

* * *

**YARD, FRONT:** The required open space, unoccupied by buildings, between the road or street right-of-way line and the principal building.

* * *

**OPEN SPACE:** An area on the same lot with a main building which is open, unoccupied and unobstructed by structures from the ground to the sky except as otherwise provided in this Ordinance. Open space lines shall coincide with or be parallel to the building setback lines on the same lot.

* * *

**RIGHT-OF-WAY:** An area of land that is legally dedicated to the public for use as a public street. The street pavement, curbs, shoulders, and sidewalks, are located within the right-of-way and generally do not represent the boundary of the street right-of-way line.

* * *

**BUILDING SETBACK LINE:** A line delineating the minimum allowable distance between the property line and a building on a lot, within which no building or other structure shall be placed except as otherwise provided.

Specifically, Mr. Straser argues that the Setback Ordinance and accompanying definitions fail to establish clearly the location from which to begin measuring the setback requirement for the front yard. Mr. Straser urges that a reading of the Setback Ordinance and accompanying definitions could lead a reasonable person to conclude that the starting point for any setback may be in at least four different locations: the center of the street, the current edge of the road, some past or future edge of the road, or the right-of-way boundary. Mr. Straser therefore contends that the Setback Ordinance is unconstitutionally vague and unenforceable. The trial court determined that the Setback Ordinance was not unconstitutionally vague. Following our thorough review of the record, we agree with the trial court's determination in this regard.

As our Supreme Court has previously elucidated:

Laws that "regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.,* [567] U.S. [239], 132 S.Ct. 2307, 2317, 183 L.Ed.2d 234 (2012) (citing *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). "[T]he root of the vagueness doctrine is a rough idea of fairness." *Colten v.*

*Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972). A law is void for vagueness if it fails either to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited or to provide sufficient standards for enforcement. *See City of Chicago v. Morales,* 527 U.S. 41, 52, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999); *Grayned v. City of Rockford,* 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *see also Phillips v. Bd. of Regents*, 863 S.W.2d 45, 48-50 (Tenn. 1993) (discussing the void-for-vagueness doctrine). A law is not void for vagueness if an "'ordinary person exercising ordinary common sense' can sufficiently understand the law and comply with [it.]" *Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (quoting *Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers,* 413 U.S. 548, 578-79, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973)).

*Moncier v. Bd. of Prof'l Resp.*, 406 S.W.3d 139, 152 (Tenn. 2013). Furthermore, because this issue presents a question of law, we review it *de novo*. *Bowden*, 27 S.W.3d at 916 (citing *Myint*, 970 S.W.2d at 924); *see also In re Estate of Haskins*, 224 S.W.3d at 678.

Concerning interpretation of municipal ordinances, this Court has previously explained:

In determining the proper construction of a municipal ordinance, we must follow the same rules as those used for construing statutes. *Tennessee Manufactured Housing v. Metro. Gov't of Nashville,* 798 S.W.2d 254 (Tenn. Ct. App. 1990). The most basic rule is "to ascertain and carry out the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Daron v. Dep't of Corr.,* 44 S.W.3d 478 (Tenn. 2001); *Lavin v. Jordan,* 16 S.W.3d 362 (Tenn. 2000).

When the language is clear and unambiguous, "legislative intent is to be ascertained from the plain and ordinary meaning of the statutory language used." *Gragg v. Gragg,* 12 S.W.3d 412 (Tenn. 2000). When the meaning of a statute is ambiguous or uncertain, other rules of construction come into play.

*Silverman v. KRSNA, Inc.*, No. M2001-01921-COA-R9-CV, 2002 WL 1015855, at *3 (Tenn. Ct. App. May 21, 2002).

Concerning this issue, the trial court stated, "Well, most significantly I find the definition, this additional definition (right-of-way definition) would remove any vagueness or inability of someone . . . to reasonably [] determine what is required by the Ordinance. . . . I think that's very clear." Based on the finding, the trial court subsequently concluded that the Setback Ordinance "wasn't unconstitutionally vague."

- 11 -

In reviewing the plain language of the ordinance, we note that "**YARD, FRONT**" is defined as the "required <u>open space</u> . . . between the <u>road or street right-of-way line</u> and the principal building." (Emphasis added.) "**OPEN SPACE**" is defined as "an area on the same lot with a main building which is open, unoccupied and unobstructed by structures from the ground to the sky except as otherwise provided in this Ordinance. Open space lines shall coincide with or be parallel to the building setback lines on the same lot." Mr. Straser postulates that based on these definitions, there are two different points from which to begin measurement of the setback requirement, from "the road or street" or from the "right-of-way." The City argues that the phrase, "the road or street right-of-way line," represents a single location. Specifically, the City asserts that "road or street" is descriptive of "right-of-way," referring to "**RIGHT-OF-WAY**" as defined in Section 2.02.

Upon careful review, we agree with the City's position. The reference to "road or street right-of-way line" in the ordinance contains no disjunctive word such as "or" between the phrases, "road or street" and "right-of-way line," to indicate that the two phrases are alternatives. "**RIGHT-OF-WAY**" is defined in the definitional section as "an area of land that is legally dedicated to the public for use as a public street. The <u>street pavement, curbs, shoulders, and sidewalks, are located within the right-of-way and generally do not represent the boundary of the street right-of-way line</u>." (Emphasis added.) Therefore, contrary to Mr. Straser's argument, the street or road is not the point of reference from which to measure the setback requirement. The plain language of this ordinance provides that the curbs, shoulders, and sidewalks are included within the definition of right-of-way. Thus, Mr. Straser's argument that a setback can be measured only by the location of the road or street is unavailing.

The trial court found that "it's the right-of-way line that's operative" and not "street or road." Our review of the record supports this determination. The ordinance indicates only one point from which the setback can be measured, and that is the right-of-way line. We therefore conclude that based on the plain and ordinary meaning of the language contained in the Setback Ordinance and attendant definitions, the Setback Ordinance is not unconstitutionally vague.

The City presented testimony from Gene McConkey, a building inspector for the City, who related that Mr. Straser's carport was in violation of the Setback Ordinance because it was within thirty feet of the right-of-way. Mr. McConkey testified:

> We had gone -- we went to the property location and done some measurements. We actually measured from the edge of the street to the building, to -- from the edge of the street, showing a visual marker for the pictures. It was to show that it was in violation.

- 12 -

Mr. McConkey further related that although the edge of the street was not the edge of the right-of-way, the street was within the right-of-way as defined in section 2.02 of the municipal ordinance. The trial court specifically found Mr. McConkey's testimony to be credible in "all respects."

Furthermore, the trial court considered over a dozen trial exhibits presented by the City, including the recorded warranty deed describing Mr. Straser's real property in question ("the Warranty Deed") and a recorded plat that is referenced therein. The Warranty Deed reflects that the real property is designated as "Lot No. Three (3), in Block 'C', in Housley Subdivision, according to the map or plat of record of said Subdivision in Plat Book 2, at page 94, in the Register's Office, McMinn County, Tennessee . . . ." A separate exhibit introduced was a copy of the official plat depicted the above-referenced "Lot No. Three (3), in Block 'C'" in Housley Subdivision, which abutted Sunview Drive.

Notably, according to Mr. McConkey's testimony, the plat indicates that the right-of-way line along Sunview Drive was the same line that was used to measure the setback, demonstrating that Mr. Straser's carport was seventeen feet, five inches, from the right-of-way line along Sunview Drive, which Mr. McConkey opined was in violation of the Setback Ordinance. In consideration of the foregoing, particularly with regard to the recorded plat establishing the perimeter boundaries of Mr. Straser's real property, we conclude that an "ordinary person exercising ordinary common sense can sufficiently understand" the Setback Ordinance and comply with it by not erecting a structure within thirty feet of the right-of-way line. *See Moncier*, 406 S.W.3d at 152.

Mr. Straser further argues that a reasonable person may construe the point from which to begin measuring the setback requirement to be the center of the street, which he asserts is "the property line." In support of his argument, Mr. Straser cites to *Hamilton Cty. v. Rape*, 101 Tenn. 222, 417-18 (1898), wherein our Supreme Court stated that a "lot owner is presumed to own to the center of the street." *Id*. at 417. However, as noted by the trial court, *Hamilton Cty.* is factually distinguishable from the case at bar. In *Hamilton Cty.*, the county government re-graded a road in front of the property in question, which impaired the property owner's ingress and egress to and from his property. *Id*. at 416. The question presented for the Court was whether a tort or unconstitutional taking had occurred. *Id*. The county argued that when a property owner records a deed referring to a lot depicted by plat reflecting an abutting street, the property owner thereby dedicates the street to the public and vests fee-simple title of the street for public use. *Id*. Our Supreme Court disagreed, instructing that a

> lot owner is presumed to own to the center of the street. He has a right of ingress and egress to his property, or, as it is called, an easement of access; and if this is taken away, or if it is impaired or incumbered, without his consent, it is a taking of his property for public purposes, for which he is entitled to compensation.

- 13 -

*Id.* at 417 (citations omitted).

The case at bar does not present facts or issues akin to those presented in *Hamilton Cty*. Instead, the instant action presents the issue of whether the relevant Setback Ordinance language is unconstitutionally vague, specifically with regard to the point of reference from which to begin measurement of the pertinent setback. Moreover, as the trial court noted, *Hamilton Cty.* was not a case concerning a violation of a municipal ordinance setback line. Rather, the main issue in that case was whether an unconstitutional taking had occurred, an issue not raised on appeal in the present case. We therefore determine Mr. Straser's reliance on *Hamilton Cty.* to be inapposite.[5]

Based on the applicable rules of construction and a thorough review of the record, we determine that the municipal ordinance language in question is not unconstitutionally vague. We therefore affirm the trial court's judgment.

## VI. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed below. Costs on appeal are assessed to the appellant, William Straser.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[5] Mr. Straser cites several additional cases as authority for the proposition that a municipality is not the *per se* owner of residential roads without due compensation to the adjoining property owner. *See, e.g., Jacoway v. Palmer*, 753 S.W.2d 675 (Tenn. Ct. App. 1988). Because this is not at issue in the present case, Mr. Straser's reliance on these cases is unavailing.